UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81623-CV-HURLEY

NERLINE HORACE-MANASSE, et al.,

    Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

**THIS CAUSE** comes before the court upon Defendant's Motion to Dismiss Amended Complaint [DE # 34]. The motion is fully briefed and ripe for adjudication. For the reasons to follow, the court will grant the motion and dismiss the amended complaint with prejudice.

**I.**

The facts underlying this action have previously been set forth in the court's order of December 13, 2011[1]:

> [F]rom January of 2007 to December of 2008[,] Henry Theodule and others perpetrated a Ponzi scheme through which he misappropriated over $68 million from Plaintiff and the class she seeks to represent. Wells Fargo's alleged involvement in the scheme occurred during the five-month period during which Theodule utilized Wachovia's[2] banking services to conduct the scheme.
>
> On March 25, 2008, after another bank ended its relationship with Theodule and the entities he had created to perpetrate the scheme, Theodule began to open accounts at Wachovia [now known as Wells Fargo, N.A.]. In total, Theodule opened forty accounts, many associated with entities identified as investment clubs—e.g., Golden

---

[1] Plaintiff has since submitted an amended complaint, but the factual allegations therein are substantially the same as those in the original complaint.

[2] Wells Fargo, N.A. is the successor-in-interest to Wachovia Bank, N.A.

> Investment Club, East Broward Private Investment Club, Premium Investment Club, etc. Plaintiff alleges that "clearly suspicious activity" ensued shortly thereafter such that on May 9, 2008, within six weeks of the time the accounts were opened, the Bank noted "numerous small dollar even amount checks from individuals" and "[l]arge dollar transfers to [Wachovia] accounts titled to Creative Capital Consortium, LLC." Compl. at ¶ 37 [DE # 1]. Plaintiff further alleges that the Bank nevertheless permitted large cash deposits and withdrawals from the accounts without filing the required Suspicious Activity Reports or Currency Transaction Reports. From May 9, 2008 to July 31, 2008, Theodule and others deposited $10,067,443.51 and nearly simultaneously withdrew $10,560,239.93 from the Creative Capital account.
>
> Ultimately, the Bank investigated the accounts and closed them approximately four months after they were opened based on mounting evidence and suspicions of fraudulent activity. From May 9, 2008 to May 13, 2008, the Bank placed restraints on the Creative Capital Accounts and accounts associated with Wealth Builders Circle, LLC after the Bank discovered that a customer in whose account a counterfeit check had been deposited issued a check to the Wealth Builders Circle account. The restraints were removed after Theodule provided the Bank with information regarding his business—i.e., that he invested funds for customers—and a package that was supposed to be representative of the material provided to prospective investors. The Bank continued to investigate the accounts, however, by *inter alia*, visiting the physical location assigned to the Creative Capital accounts and contacting investigators with the Internal Revenue Service and Florida Department of Law Enforcement.
>
> In total, fifty-nine days elapsed from the date the restraints were removed and the date the Bank reimplemented restraints in preparation for the final closing of the Creative Capital Accounts. The Creative Capital accounts were formally closed on July 25, 2008. In late September, the Bank notified a number of other individuals it suspected may have been involved with Theodule that their accounts would also be closed.

Order Granting Def.'s Mot. to Dismiss 1-3 [DE # 30].

Based on these facts, Plaintiff filed a complaint on December 23, 2010 that the court dismissed in the aforementioned order. *Id.* Plaintiff then filed an amended complaint asserting causes of action for violation of Florida's Civil Remedies for Criminal Practices Act (the "Florida RICO Act"), Fla. Stat. § 772.01, and conspiracy to violate the Florida RICO Act. Plaintiff argues

that the Bank engaged in a pattern of criminal activity as defined under the Act by repeatedly accepting cash deposits in excess of $10,000 without preparing or submitting the required currency transaction reports. Am. Compl. ¶¶ 65-74. Plaintiff also alleges that the Bank knowingly engaged in monetary transactions in criminally derived property. The Bank responded with the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's allegations of criminal activity are insufficient and also challenging the sufficiency of the allegations with respect to each of the elements of a RICO cause of action.

## II.

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a), and venue is proper pursuant to 28 U.S.C. § 1391 because this action is ancillary to the court's exclusive jurisdiction over the receivership estate. *See Secs. & Exch. Comm'n v. Creative Capital Consortium, LLC*, No. 9:10-cv-81565-DTKH, 2009 WL 5031353 (S.D. Fla. Dec. 14, 2009). Additionally, the conduct underlying Plaintiff's claims occurred in this district.

## III.

On this motion to dismiss, the court accepts the factual allegations in the amended complaint as true and views all inferences in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, ____; 129 S. Ct. 1937, 1949 (2009), and regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Applying the foregoing to the instant case, the court finds that although Plaintiff has alleged

criminal conduct that falls within the ambit of the Florida RICO Act,[3] Plaintiff has failed to allege sufficient continuity to state a claim under the Act.  Because Plaintiff has already had one opportunity to amend the complaint and because additional opportunities would be futile, the court will dismiss Plaintiff's claim with prejudice.

    A.    *Qualifying Predicate Acts*

The Florida RICO Act states that "[a]ny person who . . . has been injured by reason of any violation of the provisions of s. 772.103 shall have a cause of action . . . ." Fla. Stat. § 772.104(1). Under § 772.103, "[i]t is unlawful for any person [e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity . . . ." Fla. Stat. § 772.103(3). The Florida RICO Act contains a long list of state crimes that qualify as "criminal activity" (also termed "predicate acts"). In addition, the Act incorporates by reference "[a]ny conduct which is subject to indictment or information as a criminal offense and [is] listed in 18 U.S.C. s. 1961(1)(A), (B), (C) or (D)." Fla. Stat. § 772.102(1)(b). This provision refers to the federal RICO Act, which, in turn, defines racketeering to include money laundering. Defendant concedes that the conduct Plaintiff alleges qualifies as money laundering under 18 U.S.C. § 1956[4] or engaging in monetary transactions in property derived from unlawful activity under 18

---

[3] Due to the similarity of the Florida and federal RICO Acts, under Florida law a court can look to federal courts' interpretations of the federal RICO Act for guidance and persuasive authority in construing the Florida RICO Act. *See, e.g.*, *Lugo v. State*, 845 So. 2d 74, 96 n.39 (Fla. 2003); *Gross v. State*, 765 So. 2d 39, 42 (Fla. 2000); *Palmas y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*, 881 So. 2d 565, 570 n.1 (Fla. 3d DCA 2004).

[4] The majority of the alleged criminal activity falls under 18 U.S.C. § 1956(a)(1)(B)(ii), which states:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful

U.S.C. § 1957 and that these offenses are listed under 18 U.S.C. § 1961(1)(B).

Initially, Defendant argues that because the same conduct falls squarely within certain Florida statutes—specifically, Fla. Stat. §§ 655.50 and 896.101—and because these state statutes are not listed in the Florida RICO Act, the Florida legislature thereby manifested its intent to exclude such conduct from the Act's remedies. Defendant relies upon various principles of statutory construction to reach this conclusion. However, a statute's plain meaning is always the starting point, *Roberts v. Sea-Land Servs., Inc.*, ___ U.S. ____, 2012 WL 912953, *5 (2012), and only in certain cases—e.g., ambiguity or an absurd result—would a court need to go further. *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1212-13 (11th Cir. 2010). In the instant case, Florida's RICO Act expressly incorporates encompasses the federal violations as adequate predicate acts, and consequently, the court is bound by the plain, unambiguous language of the statute.

B.  *Legal Sufficiency of Plaintiff's Florida RICO Claim*

Having determined that Plaintiff has alleged qualifying criminal activity to state a Florida RICO claim, the court must now determine whether she can "satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Doorbal v. State*, 983 SO. 2d 464, 492 (Fla. 2008); *see also Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006). Although Defendant disputes the sufficiency of Plaintiff's allegations with respect to

---

activity . . . knowing that the transaction is designed in whole or in part . . . to avoid a transaction reporting requirement under State or Federal law, shall be sentenced .
. . .

Plaintiff also alleges a violation of § 1956(a)(1)(B)(i) and § 1957(a). In the instant motion, the Bank does not directly challenge whether Plaintiff has sufficiently alleged the elements of these violations. For this reason and because the court can fully resolve the motion on the issue of continuity, *see* Part III.B., the court will forgo an analysis of whether Plaintiff has adequately alleged a violations of §§ 1956 and 1957.

each of the elements, the court will focus its attention on the pattern element and specifically its subsidiary requirement that "the predicate acts demonstrate[] criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

The Supreme Court in *H.J. Inc. v. Nw. Bell Tel. Co.* defined the federal RICO term "pattern" to include two constituent elements: relatedness and continuity. 492 U.S. 229, 239 (1989). "Relatedness" refers to "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. "Continuity," on the other hand, requires proof that the criminal acts "amount to, or that they otherwise constitute a threat of *continuing* racketeering activity." *Id.* at 240-41.

### 1. Applicability of the Continuity Requirement to the Florida RICO Act

There is no doubt that the continuity requirement applies equally to the Florida RICO Act as it does to the federal Act. *State v. Lucas*, 600 So. 2d 1093, 1094 (Fla. 1992); *Bowden v. State*, 402 So. 2d 1173, 1174 (Fla. 1981) ("We construe the 'pattern' element to require . . . proof that a continuity of particular criminal activity exists."); *Lugo*, 845 So. 2d at 99 ("To satisfy the pattern of racketeering requirement, the State must offer . . . 'proof that a continuity of particular criminal activity exists.'" (quoting *State v. Lucas*, 600 So. 2d 1093, 1094 (Fla. 1992))). The court will therefore apply the continuity requirement to Plaintiff's Florida RICO claims and will look to interpretations of the Federal RICO Act for guidance in doing so. *Id.* at 96 n.39.

### 2. Closed-Ended Continuity

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 492 U.S. at 241. "A party . . . may demonstrate continuity over a closed period

by proving a series of related predicates extending over a *substantial period of time.*" *Id.* (emphasis added). "Predicate acts extending over a few weeks or months . . . do not satisfy this requirement." *Id.* "The overwhelming weight of case authority suggests that nine months is not an adequately substantial period of time." *Jackson*, 372 F.3d at 1266.

In the instant case, Plaintiff alleges predicate acts from April 3, 2008 to July 31, 2008, a span of 120 days. While Florida courts have not ruled out periods as short as six-months, *Lucas*, 600 So. 2d at 1095, Plaintiff cites no authority finding closed-ended continuity for predicate acts spanning only four months. Even for a scheme of particularly grand scope, the court in *Magnifico v. Villanueva* considered it a "close question" whether a duration of eighteen months was sufficient. 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011).

Plaintiff has a substantial burden to demonstrate that the short period in this case satisfies the continuity requirement, and she has failed to do so. Not only is the alleged RICO scheme of unprecedented brevity, but certain factors particular to this case also undermine the notion of continuity. Simply put, the clock was ticking on the Theodule's relationship with the Bank from the outset. Within six weeks of the date the accounts were opened, the Bank began noting its suspicions of impropriety, and after intermittently placing restraints on the accounts, the Bank closed them on its own initiative after approximately four months. Am. Compl. Ex. B [DE # 32-1]. Even if the Bank wrongfully allowed the accounts to stay active after it knew of Theodule's improper conduct, it is undisputed that once the evidence reached a certain threshold, the Bank voluntarily terminated the relationship. This limited period of time during which the Bank is alleged to have participated in the RICO enterprise precludes a finding of continuity.

3. Open-Ended Continuity

Plaintiff has also failed to demonstrate open-ended continuity, which depends on a "*threat* of continuity." *Id. See also Moon v. Harrison Piping Supply*, 465 F.3d 719, 726 (6th Cir. 2006) ("This inquiry turns on whether the plaintiff has pleaded facts suggesting the threat of continued racketeering activities projected into the future."). The purpose of the open-ended continuity concept is to allow a plaintiff to bring a RICO claim without, in an effort to meet the closed-ended continuity requirement, having to wait for the alleged criminal activity to extend over a "substantial period of time." Naturally, courts do not want to impose a doctrine that would tie a plaintiff's hands in the face of ongoing criminal activity. Thus, the concept of open-ended continuity was fashioned to allow plaintiffs to project the "substantial period of time" into the future by showing that the criminal activity alleged would likely continue and that *eventually* the plaintiff would have been able to show related, continuous predicate acts sufficient for closed-ended continuity.

While the open-ended continuity inquiry is too fact specific to permit the articulation of a bright-line standard, the court in *H.J.* provided a number of useful examples. 492 U.S. at 242. For instance, if a "hoodlum" were to extort from storekeepers a monthly fee to "insure" against vandalism and harassment, open-ended continuity would be apparent because "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future." *Id.* The Court also conceived that the continuity requirement might be satisfied when "the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 243. In each case, the threat of continuity is clear enough to assure the court that the RICO claim addresses "long-term criminal activity" even if the activity has not yet occurred for a substantial duration.

Applying this reasoning, the court finds the open-ended continuity approach inapplicable to the instant case. Plaintiff's allegations simply provide no basis to infer a threat, implicit or

otherwise, of the Bank's predicate acts continuing into the future. To the contrary, Plaintiff admits that once the Bank gained a certain amount of evidence, it closed the accounts. The absence of open-ended continuity is apparent most plainly because by the time this action commenced the Bank had already terminated its relationship with Plaintiff on its own initiative and after only four months. Am. Compl. ¶ 46 [DE # 32]. It was not, as Plaintiff suggests, merely a "fortuitous interruption . . . such as by an arrest" that terminated the Bank's criminal activity but an entirely predictable interruption that was the product of Bank's own internal policy of monitoring and reviewing its customers' accounts. *See United States v. Busacca*, 936 F.3d 232, 238 (6th Cir. 1991), *cert. denied*, 502 U.S. 985 (1991).

Plaintiff cannot overcome this analysis by resort to an allegation that the alleged predicate acts, specifically the alleged repeated failures to file required currency transaction reports, exemplify the Bank's "regular way of doing business." *H.J.*, 492 U.S. at 243. Even if it is true that the Bank regularly fails to comply with reporting requirements, any future noncompliance would bear no relationship to the failures that constitute the alleged predicate acts,[5] which Plaintiff alleges were committed in concert with Theodule for the purpose of "bilk[ing] millions of dollars from literally thousands of hard-working members of the Haitian community." Am Compl. ¶ 59. None of Plaintiff's allegations support a finding that the Bank routinely fails to file currency transaction reports with similar purposes, results, participants, or victims. Thus, even if Plaintiff had waited any

---

[5] Importantly, the *H.J.* Court noted not only "*what* must be continuous," namely, the predicate acts, but also "the *relationship* the[] predicates must bear one to another." *Id.* This is presumably why the court in *GE Investment Private Placement Partners II v. Parker* stated when evaluating a "regular way of doing business" argument that "[t]he predicate acts of fraud directed at the lenders are relevant in this case only insofar as they are related to the acts of fraud directed at Plaintiffs." 247 F.3d 543, 550 (4th Cir. 2001); *see also Moon*, 465 F.3d at 728 (rejecting a "regular way of doing business" for open-ended continuity because the allegations "d[id] not support a systematic threat of ongoing fraud.").

amount of time, there would never come a point when the Bank's alleged criminal activity would have been sufficiently related and continuous to warrant a RICO claim.

For the foregoing reasons, the court finds that Plaintiff has not met the continuity requirement. Plaintiff's claim therefore does not address the sort of "long-term criminal activity" the Florida RICO Act is meant to confront and must be dismissed.[6]

C.   *Conspiracy to Violate Florida's RICO Act*

Because Plaintiff has failed to state a claim of a primary RICO violation and the conspiracy count does not contain any additional allegations, the claim for conspiracy to commit a RICO violation also fails. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 n.6 (11th Cir. 2010).

**IV.**

For the foregoing reasons, the court concludes that Plaintiff's amended complaint must be dismissed for failure to state a claim. The court further finds that this dismissal should be with prejudice. The court has already afforded Defendant an opportunity to amend, and additional opportunities would be futile in light of the court's reasoning in this Order. *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 2004). Plaintiff's own allegations and exhibits make clear that she cannot establish the requisite continuity to state a claim under the Florida RICO Act.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.   Defendant's motion [DE # 34] is **GRANTED**.

---

[6] This motion is being resolved on other grounds. However, the court has carefully considered the issue of whether the "operation and management" test articulated in *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), applies to Florida RICO claims. Without deciding this issue, the court notes that the language in Fla. Stat. § 772.103(3) differs from the federal statute, which may render the analysis in *Reves* inapplicable to the Florida RICO Act. *See* Etan Mark & Monica F. Rossbach, *Qué RICO? Discarding the Fallacy that Florida RICO and Federal RICO Are Identical*, 86 Fla. B.J. 10 (January 2012).

Order Granting Defendant's Motion to Dismiss with Prejudice
Manasse v. Wells Fargo Bank, N.A.
Case No. 10-81623-CV-HURLEY/HOPKINS

2. The amended complaint is **DISMISSED WITH PREJUDICE**.

3. Pursuant to Fed. R. Civ. P. 58(a), the court will enter final judgment in a separate document.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 12th day of April, 2012.

_____
Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*